IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO CONSERVATION LEAGUE, and GREATER YELLOWSTONE COALITION,<br>        Plaintiff,<br><br>v.<br><br>U.S. FOREST SERVICE,<br>        Defendant.<br><br>And<br><br>OTIS CAPITAL USA CORP., a Nevada Corporation,<br>        Defendant Intervenor | Case No.  1:18-CV-504-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to alter or amend.  The motion is fully briefed and at issue.  For the reasons explained below, the Court will grant the motion.

## FACTS

The Court will review briefly the facts of this case that were more fully set forth in its earlier decision filed December 18, 2019.  For several years the Otis Capital USA Corp has been exploring for gold on its mining claims held on public lands near the Idaho-Montana border. Otis filed a proposal to expand its current operations, known as the Kilgore Project, and it was approved by the Forest Service following an Environmental Assessment (EA) and a Finding of No Significant Impact (FONSI).

**Memorandum Decision & Order – page 1**

Eventually, if the Project identifies sufficient gold deposits, Otis would propose a mining plan to build an open-pit cyanide heap leach mine, but that is not yet determined and was not before the Court. The only issue before the Court was whether the Forest Service's approval of Otis's expansion of the existing exploratory project was proper.

The Project approved by the Forest Service involves the construction of 10.5 miles of new roads and 140 drill stations. Each year Otis would be authorized to operate 3 motorized drill rigs from July 16 through November, 24 hours a day, 7 days a week, to drill up to 420 exploratory holes by Project completion. On average, drill holes would extend 1,300 feet underground; the drill pads would be 50 feet long and generally as wide as the road where they are located. To obtain drill water, and other water needed for the Project, Otis is authorized to pump water from an existing on-site well and to pump water directly from West Camas and Corral Creeks.

Every day of operations, Otis would shuttle workers and supplies – including hazardous fuels and drilling fluids – to and from the Project site. About 23 total acres of surface would be disturbed over five years by the Project, and Otis would be responsible for reclaiming all roads to match pre-existing topography at the end of that time.

The Project site is located in terrain consisting of many steep slopes. There are numerous headwater streams in the Project site area, all of which flow into West Camas Creek or Corral Creek. These creeks both flow into Camas and Beaver Creeks.

The Forest Service's Environmental Assessment highlighted the importance of groundwater monitoring to ensure that drilling does not cause contamination of the groundwater. At the same time, baseline data is crucial to the monitoring program to

provide a basis for comparison – without a baseline the agency will not know when conditions are deteriorating.

In the Dog Bone Ridge area – where drilling will occur – there is no groundwater monitoring. Dog Bone Ridge is on the west side of the slopes but all the monitoring is occurring on the east side slopes. The record showed that water from the Dog Bone Ridge drainage will flow into Corral Creek that contains the Yellowstone cutthroat trout, a sensitive species native to the Project area and surrounding watersheds.

In its decision reviewing the Forest Service's approval of this Project, the Court found that the record revealed that the agency did not know how groundwater will drain from Dog Bone Ridge to Corral Creek.  Because the Forest Service did not do a baseline study on the Dog Bone Ridge area, and is not requiring any monitoring there, the agency does not know whether drilling will cause contaminated groundwater to flow into Corral Creek, and did not study whether this will affect habitat for the Yellowstone cutthroat trout.  These failures, the Court held, violated NEPA, FLPMA, and the Organic Act.  *See Memorandum Decision (Dkt. No. 47).*  The Court rejected the plaintiffs' claims that the Forest Service failed to adequately consider impacts to grizzly bears, the Columbia Spotted Frog, and the Whitebark Pine, and the Court similarly rejected claims that the agency failed to consider the risks of fuel spills, soil degradation, and sedimentation.

As a remedy, plaintiffs had asked the Court to vacate the Forest Service's Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) and remand the case to the agency for further consideration.  The Court remanded the case

but did not discuss or consider plaintiffs' request to vacate the EA. In the motion to amend now pending, plaintiffs ask the Court to vacate the EA and FONSI.

## ANALYSIS

Following the Court's decision, Otis announced that it will proceed with its Project in all areas other than Dog Bone Ridge. *See Second Johnson Declaration (Dkt. No. 49-2).* Allowing the Project to proceed in this manner essentially splits the Project into two, violating a central principle of NEPA that an action be considered as a whole. *Earth Island Inst. v. U.S. Forest Serv.,* 351 F.3d 1291, 1305 (9th Cir. 2003) (holding that under NEPA agencies must avoid "dividing a project into multiple actions"). Splitting the Project this way ignores the possibility that once the Forest Service fully studies the impacts of the Dog Bone Ridge portion of the project, it may consider changes to other parts of the Project or may order an EIS. If the rest of the Project proceeds before the study, the damage will be done and the options for the Forest Service significantly limited. This is why NEPA requires the study before making a decision. *See* 42 U.S.C. § 4332(2)(C). "[A]llowing a potentially environmentally damaging program to proceed without an adequate record of decision runs contrary to the mandate of NEPA." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007).[1]

All of this explains why the Ninth Circuit orders remand without vacatur "only in limited circumstances" and "only when equity demands" doing so. *Pollinator*

---

[1] These authorities apply with equal force to Otis's argument that if the Court is considering vacatur that it issue a partial vacatur affecting only the Dog Bone Ridge part of the Project. That argument must be rejected for the same reason.

**Memorandum Decision & Order – page 4**

*Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Otis argues that equity demands remanding without a vacatur because vacating the EA and FONSI will stop the entire Project and result in economic loss and layoffs. A vacatur will certainly result in delays but that is the normal result of a full NEPA study and cannot be used to justify splitting a project as Otis suggests. Indeed, Otis argues that it has already started working with the Forest Service on the Dog Bone Ridge study and represents that the agency error could be corrected quickly. *See Otis Brief (Dkt. No. 51)* at pp. 6-7.

The Court can find no reason in equity – or any other reasons for that matter – to avoid a vacatur.

## Conclusion

For these reasons, the Court will grant plaintiffs' motion to alter judgment and will vacate the August 20, 2018 Decision Notice and Finding of No Significant Impact (DN/FONSI), and the Environmental Assessment (EA), issued by Defendant U.S. Forest Service approving the Kilgore Project. The Court will issue a separate Amended Judgment.

### ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to alter judgment (docket no. 49) is GRANTED.

IT IS FURTHER ORDERED, that the August 20, 2018 Decision Notice and Finding of No Significant Impact (DN/FONSI), and the Environmental Assessment (EA),

issued by Defendant U.S. Forest Service approving the Kilgore Project are hereby VACATED.   The Court will issue a separate Amended Judgment.

DATED: May 4, 2020

_____
B. Lynn Winmill
U.S. District Court Judge